BEINECKE *v.* THE STEAMSHIP SECRET.

MAXWELL *v.* THE STEAMSHIP SECRET.

(*District Court, S. D. New York.* July 28, 1880.)

1. SUPPLIES—LIENS.—*Held*, under the circumstances of these cases, that the libellants had no liens for supplies furnished a foreign vessel

*W. R. Beebe*, for libellants.

*W. Mynderse*, for claimant.

CHOATE, D. J. These are suits for supplies against a foreign vessel. She was owned by a foreign corporation, which, however, had an office and transacted business in the city of New York, and was in good credit here. At the time the supplies were furnished she was under charter to Murray, Ferris & Co., a firm of commission merchants in this city, all resident here. By the terms of the charter Murray, Ferris & Co. were to furnish all her supplies. The supplies furnished by Beinecke were fresh meats, delivered in New York to Murray, Ferris & Co., at a steam-boat pier, on the understanding that they were to be shipped by steamer to Jacksonville, Florida, between which port and certain foreign ports the steam-ship Secret was then running, as one of a regular line controlled by Murray, Ferris & Co.

The meats were packed in ice boxes, on the pier in New York, under the direction of libellant, and bills of lading for them, with other goods shipped, were taken by, and in the name of, Murray, Ferris & Co. The libellant charged the goods on his books to Murray, Ferris & Co. The transactions were generally once a week, and continued from the tenth of January, 1879, to the fourth of April, 1879. The bills up to and including the fourteenth of March were made out against Murray, Ferris & Co., and were rendered after each transaction. Those of the eighth and fourteenth of March were altered in the heading by striking out the names "Murray, Ferris & Co.," and inserting "S. S. Secret." This was done at the office of Murray, Ferris & Co., and for their convenience in keeping their accounts. The four bills

subsequent to the fourteenth of March, for which this suit is brought, were made out against "Steamer Secret and owners." No explanation of this change is given except the alteration by Murray, Ferris & Co. in the former bills. All the bills up to and including that of the fourteenth of March were paid by Murray, Ferris & Co., generally within about one month after they were incurred. The last four bills, amounting to $336.34, remained unpaid when Murray, Ferris & Co. failed, and hence this suit.

It appeared that the arrangement for furnishing meat to this steam-ship was made by a salesman of the libellant, who solicited the business of Murray, Ferris & Co. He testified that the arrangement was made in Florida, and that one of the firm then informed him that the firm was not responsible, and was insolvent, and that the steamer was responsible. This is clearly proved to be a mistake. Neither he nor the libellant knew who owned the steamer, nor what the relation of Murray, Ferris & Co. to her was, except that they were running her on this line. At some time after the transaction commenced they made inquiry of a mercantile agency, and the information they received was not favorable to the financial standing of Murray, Ferris & Co., and they appear to have supposed that, in case Murray, Ferris & Co. did not pay the bills, the steamer would be legally liable, and they continued to furnish the supplies. They had no knowledge and made no inquiries as to how long the steamer would continue to be run on this line, nor had they any reason to believe that she would ever come to New York, or any other American port out of Florida.

The libellant Maxwell furnished ship's stores to the Secret while she was in this port in December, 1878, before she went to Florida to run on this line. The amount of the bill was about $300. The goods were delivered to the steamer in New York on the order of Murray, Ferris & Co. The libellant made no inquiries as to the ownership of the vessel, or Murray, Ferris & Co.'s relation to her. He knew she was going to Florida, and had no reason to suppose she would return to this port. He knew that Murray, Ferris & Co. had

some business for the employment of steamers between ports in Florida and foreign ports. He charged the goods on his books to "Steamer Secret and owners." It was his practice, however, in all cases where he sold goods for vessels, both foreign and domestic, to make the charges on his books in this way. He was well acquainted with the senior member of the firm of Murray, Ferris & Co., and believed him to be a person of entire integrity. It was well known in New York that a former firm of Murray, Ferris & Co., composed in whole or in part of the same members, had failed in 1874, and that the firm, in December, 1878, were doing business under the name of "Murray, Ferris & Co., Agents." They were actively engaged in business, but their financial standing was not high.

The libellant sent in his bill to Murray, Ferris & Co. after the steamer left this port, and they paid on account of it $90. The balance remains unpaid. Afterwards, and while the vessel was at Florida, he furnished, upon the order of Murray, Ferris & Co., a further bill of goods to the amount of $18, which were to be sent to her in Florida. They were delivered to and shipped by Murray, Ferris & Co. This suit is for the balance of the first bill, and for the goods sent to Florida; in all, $222.81.

Upon these facts it is clear that the libellants have no lien on the vessel. They knew they were dealing with New York parties, and not with the foreign owner or the master, who presumably represents the owner; and they were put upon inquiry as to the interest and relation of Murray, Ferris & Co. to the vessel, and are chargeable with the facts they might have ascertained on such inquiry. They could easily have learned that Murray, Ferris & Co. had no right or power to bind the owners or the vessel for the supplies, and that they were, in fact, the owners, so far as concerned parties supplying the ship. *Consol. Coal Co.* v. *The Secret,* U. S. Circ. Ct. S. D. N. Y., December 1, 1879, and cases cited.

I think, also, it cannot be fairly claimed that either of these libellants furnished the goods on the credit of the vessel in such sense as to entitle them to a maritime lien. While they

·both appear to have entertained the notion that a party supplying a vessel, whether foreign or domestic, has, in all cases, an ultimate right to fall back on the vessel if the party dealt with does not pay, there is, I think, sufficient evidence that they understood that they were dealing with Murray, Ferris & Co., and gave them credit and expected them to pay the bills, and had no real intention or expectation of looking to the vessel for their pay. The amount of the bills run up was at no time large, and Murray, Ferris & Co. had credit enough to be trusted to that extent, and were, I think, at the time so trusted. Maxwell let the steamer go to sea without trying to collect his bill, and Beinecke delivered the goods absolutely to Murray, Ferris & Co. here in New York. Neither of them had any reason to suppose they would ever have an opportunity to collect the bills from the vessel herself, unless it was by attaching her in a port of Florida, which it is hardly supposable they would have contemplated as practicable for so small an account. Case last cited, in district and circuit courts.

Libels dismissed, with costs.